# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| BRANDON CURTIS FERREL,<br><br>          Plaintiff,<br><br>     vs.<br><br>COMMISSIONER OF SOCIAL<br><br>SECURITY,<br><br>          Defendant. | No. 2:16-CV-00126-MKD<br><br>ORDER DENYING PLAINTIFF'S<br>MOTION FOR SUMMARY<br>JUDGMENT AND GRANTING<br>DEFENDANT'S MOTION FOR<br>SUMMARY JUDGMENT<br><br>ECF Nos. 18, 20 |

BEFORE THE COURT are the parties' cross-motions for summary judgment. ECF Nos. 18, 20. The parties consented to proceed before a magistrate judge. ECF No. 7. The Court, having reviewed the administrative record and the parties' briefing, is fully informed. For the reasons discussed below, the Court denies Plaintiff's motion (ECF No. 18) and grants Defendant's motion (ECF No. 20).

## JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. § 1383(c)(3).

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an

ALJ's decision on account of an error that is harmless." *Id.* An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

**THREE-STEP PROCESS FOR CHILDHOOD DISABILITY**

To qualify for Title XVI supplement security income benefits, a child under the age of eighteen must have "a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i). The regulations provide a three-step process to determine whether a claimant satisfies the above criteria. 20 C.F.R. § 416.924(a). First, the ALJ must determine whether the child is engaged in substantial gainful activity. 20 C.F.R. § 416.924(b). Second, the ALJ considers whether the child has a "medically determinable impairment that is severe," which is defined as an impairment that causes "more than minimal functional limitations." 20 C.F.R. § 416.924(c). Finally, if the ALJ finds a severe impairment, the ALJ must then consider whether the impairment "medically equals" or "functionally equals" a disability listed in the "Listing of Impairments." 20 C.F.R. § 416.924(c)-(d).

If the ALJ finds that the child's impairment or combination of impairments does not meet or medically equal a listing, the ALJ must determine whether the impairment or combination of impairments functionally equals a listing.  20 C.F.R. § 416.926a(a) (2011).[1]  The ALJ's functional equivalence assessment requires the ALJ to evaluate the child's functioning in six "domains."  These six domains, which are designed "to capture all of what a child can or cannot do," are as follows:

(1)  Acquiring and using information:

(2)  Attending and completing tasks;

(3)  Interacting and relating with others;

(4)  Moving about and manipulating objects;

(5)  Caring for self; and

(6)  Health and physical well-being.

20 C.F.R. § 416.926a(b)(1)(i)-(vi) (2011).  A child's impairment will be deemed to functionally equal a listed impairment if the child's condition results in a "marked"

―――――――――――――――――

[1] As of March 27, 2017, 20 C.F.R. § 416.926a(a) was amended.  The ALJ rendered his decision on April 29, 2014, thus, the Court applies the version effective  June 13, 2011.

limitations in two domains, or an "extreme" limitation in one domain. 20 C.F.R. § 416.926a(a) (2011). An impairment is a "marked limitation" if it "interferes seriously with [a person's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i) (2011). By contrast, an "extreme limitation" is defined as a limitation that "interferes very seriously with [a person's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3)(i) (2011).

## ALJ'S FINDINGS

The Secretary of the Washington State Department of Social and Health Services protectively applied for Title XVI supplemental security income benefits on April 12, 2012,[2] on behalf of Plaintiff, a minor child, alleging a disability onset

_____

[2] There is a discrepancy in the record regarding the application date. The ALJ indicated the application was filed April 2, 2012. Tr. 20, 34; *see also* ECF No. 20 at 2. However, both the application itself, Tr. 150-59, and Plaintiff's brief, ECF No. 18 at 1, cite an application date of April 12, 2012. The Court notes that the dates does not impact the determination of benefits.

date of August 17, 1996.[3]  Tr. 150-59.  The application was denied initially, Tr. 90-93, and on reconsideration, Tr. 100-03.  Plaintiff appeared at a hearing before an administrative law judge (ALJ) on April 22, 2014.  Tr. 45-68.  On April 29, 2014, the ALJ denied Plaintiff's claim.  Tr. 20-34.

At step one of the sequential evaluation process, the ALJ found Plaintiff had not engaged in substantial gainful activity since April 2, 2012, the date the application was filed.  Tr. 23.  At step two, the ALJ found Plaintiff has the following severe impairment: cognitive disorder, not otherwise specified with attention deficits.  Tr. 23.  At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals a listed impairment.  Tr. 23.  The ALJ then determined Plaintiff does not have an impairment or combination of impairments that functionally equals the severity of the listings.  Tr. 23.  As a result, the ALJ concluded that Plaintiff has not been disabled, as defined in the Social Security Act, since April 2, 2012, the date the application was filed.  Tr. 34.

---

[3] The record indicates Plaintiff's claim was previously allowed; however, when Plaintiff's father was incarcerated, Plaintiff was placed into foster care and SSI ended, necessitating the current reapplication.  Tr. 49, 61.

On February 23, 2016, the Appeals Council denied review, Tr. 1-3, making the Commissioner's decision final for purposes of judicial review. *See* 42 U.S.C. § 1383(c)(3); 20 C.F.R. §§ 416.1481, 422.210.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying him supplemental security income benefits under Title XVI of the Social Security Act. ECF No. 18. Plaintiff raises the following issues for this Court's review:

1.     Whether the ALJ properly determined that Plaintiff's impairments did not functionally equal a listed impairment; and

2.     Whether the ALJ properly weighed the medical opinion evidence. ECF No. 18 at 8.

## DISCUSSION

**A.     Impairments that Meet or Functionally Equal a Listed Impairment**

First, Plaintiff contends that the ALJ erred by failing to find that Plaintiff's impairments meet or functionally equal a listed impairment. ECF No. 18 at 8-14. Specifically, Plaintiff alleges he suffers marked impairment in four of the six domains. Plaintiff further contends that in failing to find marked limitations in at least two domains, the ALJ failed to appropriately weigh medical evidence. *Id.*

The ALJ is responsible for deciding functional equivalence after consideration of all evidence submitted. 20 C.F.R. § 416.926a(n) (2011). The

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 7

Regulations list the information and factors that will be considered in determining whether a child's impairment functionally equals a Listing. 20 C.F.R. § 416.926a (2011); 20 C.F.R. §§ 416.924a (2011); 416.924b. In making this determination, the Commissioner considers test scores together with reports and observations of school personnel and others. 20 C.F.R. §§ 416.924a(a), 416.926a(e)(4)(ii) (2011). The ALJ also considers how much extra help the child needs, how independent he is, how he functions in school, and the effects of treatment, if any. 20 C.F.R. § 416.926a(b) (2011). In evaluating this type of information, the ALJ will consider how the child performs activities as compared to other children his age who do not have impairments. 20 C.F.R. § 416.926a(b) (2011). This information comes from examining and non-examining medical sources as well as "other sources," such as parents, teachers, case managers, therapists, and other non-medical sources who have regular contact with the child. *See, e.g.,* 20 C.F.R. § 416.913(c)(3), (d); Social Security Ruling (SSR) 98-1p, IV.B. (Sources of Evidence).

As the ALJ noted, a child has a "marked limitation" in a domain when his impairment "interferes seriously" with the ability to independently initiate, sustain, or complete activities. Tr. 3 (citing 20 C.F.R. § 416.926a(e)(2) (2011)). A child's day-to-day functioning may be seriously limited when the impairment limits only one activity or when the interactive and cumulative effects of the impairments limit

several activities.  Tr. 3 (citing § 416.926a(e)(2) (2011)).  The regulations explain

that a "marked" limitation also means:

1. A limitation that is "more than moderate" but "less than extreme."

2. The equivalent of functioning that would be expected on standardized testing with scores that are at least two, but less than three, standard deviations below the mean.

3. A valid score that is two standard deviations or more below the mean, but less than three standard deviations, on a comprehensive standardized test designed to measure ability or functioning in that domain, and his day-to-day functioning in domain-related activities is consistent with that score.

20 C.F.R. § 416.926a(e)(2) (2011).

Plaintiff contends the ALJ should have found marked limitations in four

domains: acquiring and using information; attending and completing tasks;

interacting and relating with others; and caring for self.  ECF No. 18 at 11.[4]

*1. Acquiring and Using Information*

The ALJ found less than a marked limitation in this domain.  Tr. 29.  The

domain of "acquiring and using information" is concerned with how well a child

acquires and learns information, and how well the child uses the information

_____

[4] Because Plaintiff does not challenge the ALJ's finding that he suffers no

limitations in the domains of moving about and manipulating objects, and health

and physical well-being, the Court does not address these domains.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 9

learned.  20 C.F.R. § 416.926a(g) (2011); S.S.R. 09-3p.  A limitation in this domain may be found if, for example, a child is not reading, writing, or doing arithmetic at appropriate grade level.  Soc. Sec. Ruling 09-3p.; Title XVI: Determining Childhood Disability-the Functional Equivalence Domain of "Acquiring & Using Information" (S.S.A. Feb. 17, 2009).  Further, poor grades or inconsistent academic performance are among the more obvious indicators of a limitation in this domain *provided they result from a medically determinable mental or physical impairments.*  SSR 09-3p at 3 (S.S.A. Feb. 17, 2009) (emphasis added).

First, the ALJ found the objective evidence did not support marked limitation.  Tr. 29.  The ALJ found, for example, that Plaintiff has difficulty multiplying and dividing numbers over 10, but is otherwise able to perform math without difficulty.  Tr. 29 (citing Tr. 171) (in March 2012, social worker Ryan Sadler indicated Plaintiff is unable to multiply and divide numbers over 10, but is able to add and subtract numbers over 10, tell time, and understand money and make change).  The ALJ further found, relying on Mr. Sadler's report, that Plaintiff can read and understand stories in books, magazines and newspapers, and can spell words of more than four letters.  Tr. 29 (citing Tr. 171) (Mr. Sadler checked boxes indicating Plaintiff was able to perform these tasks).

The ALJ also relied on the testimony of the reviewing psychologist when he found less than marked limitation in this domain. Tr. 27-29. In assessing functional equivalence, the Commissioner is to consider all the evidence submitted, 20 C.F.R. § 416.926a(n), including test scores. 20 C.F.R. §§ 416.926a(e)(4)(ii) (2011). Here, the ALJ relied on Dr. McKnight's testimony that Plaintiff's test scores in the borderline to low average range of intellectual functioning do not equate to marked limitations in this domain. Tr. 27-29 (citing *e.g.,* Tr. 348 (in November 2012, examining psychologist Dr. Ethington opined Plaintiff's test scores indicated borderline intellectual functioning); Tr. 53 (reviewing psychologist Dr. McKnight testified Mead School District records in 2010 showed a full scale IQ score of 80 (citing Tr. 253)); Tr. 53-54 (Dr. McKnight opined that Plaintiff's test scores overall were "exceptionally average" and indicated Plaintiff is "reasonably capable of performing academically); Tr. 54 (Dr. McKnight opined that none of Plaintiff's scores are two standard deviations below the mean as required for disability in this domain); Tr. 54-55 (Dr. McKnight opined Dr. Ethington's November 2012 neuropsychological evaluation results indicated cognitive ability, as she found Plaintiff's thought process was logical and goal-oriented, Plaintiff was able to recall six digits forward and five digits backward, and concentration and attention were within normal limits (citing Tr. 345)).

Second, in assessing this domain, the ALJ found Plaintiff's "main problem appears to be his disregard for attending school." Tr. 25. Limitation in this domain may be shown by poor grades or inconsistent academic performance, "provided they result from a medically determinable mental or physical impairment(s)." S.S.R. 09-3p at 3 (S.S.A. Feb. 17, 2009).

Plaintiff had both poor grades and poor attendance. In May 2012, Plaintiff's special education teacher opined Plaintiff had obvious and serious problems in acquiring and using information, although she also opined Plaintiff attended school less than forty percent of the time. Tr. 185-86. In October 2012, Dr. Ethington noted Plaintiff's grades in seventh and eighth grade were D's and F's, and in ninth and tenth grades, F's. Tr. 345. The ALJ found that, although testing, examinations and the claimant's own statements showed he was cognitively and socially capable of attending school, he simply chose not to go. Tr. 25. This indicates the ALJ found Plaintiff's poor grades resulted from his absenteeism rather than physical or mental impairment. Tr. 25.

There is substantial evidence of Plaintiff's absenteeism. For example, in October 2012, Plaintiff told Dr. Ethington that he had "lost motivation for graduating high school." Tr. 26 (citing Tr. 345). The ALJ noted that Plaintiff's father, Lloyd Ferrel, told Dr. Ethington that Plaintiff missed a substantial amount of school because Plaintiff was leaving campus after being dropped off. Tr. 26

(citing Tr. 344). Further, Mr. Ferrel also testified that Plaintiff left school on a regular basis after Mr. Ferrel dropped him off. Tr. 24 (citing Tr. 62); *see also* Tr. 52 (reviewing psychologist Dr. McKnight testified that "attending or going to school was a problematic issue for him."). Additionally, one of Plaintiff's teachers noted in May 2012 that Plaintiff rarely attended class. Tr. 25 (citing Tr. 185) (Plaintiff's special education teacher, Sue Stookey noted that she did not have enough information to respond regarding Plaintiff's abilities "due to him rarely showing up for class."). Furthermore, while Ms. Stookey noted Plaintiff had obvious problems in nearly all functional areas, she also pointed out that she did not know very much about Plaintiff due to his poor attendance; accordingly, she stated that she had based her assessment on information from previous school records and limited interaction. Tr. 25 (citing 185-86; 188). The record supports the ALJ's finding that Plaintiff's poor grades were more likely the result of poor attendance rather than limitations from an impairment, as is required for finding marked limitation in this domain.

Plaintiff contends the ALJ's finding of less than marked limitation was based solely on Mr. Sadler's report, ECF No. 18 at 11-12, but contention is not supported by the record. As noted, the record shows that the ALJ relied on the objective evidence of Plaintiff's cognitive capabilities (including the results of Dr. Ethington's testing and the opinion of the testifying psychologist), the evidence of

Plaintiff's frequent absenteeism, including the testimony of Plaintiff's father, Plaintiff's own statements, and an assessment by one of Plaintiff's teachers, in addition to Mr. Sadler's report, when he assessed limitations in this domain.

Plaintiff next contends the ALJ should have credited the opinions of two examining sources, Dr. Charbonneau and Dr. Pollack, when he assessed Plaintiff in this domain. ECF No. 18 at 11-12. Dr. Charbonneau is not, as Plaintiff contends, an examining physician, because his report is not in the record. In support of his contention, Plaintiff cites a November 2010 record from the Mead School District. ECF No. 18 at 11 (citing Tr. 249). However, this document is not Dr. Charbonneau's opinion or report. Instead, it is a document sent from the Mead School District to the Spokane Public Schools as part of a student transfer. Tr. 245-67. Included is an Individualized Education Plan (IEP) for Plaintiff that references other records, including a report by Dr. Charbonneau; however, the actual report is not attached.[5] Notably, the reference to Dr. Charbonneau indicates

_____

[5] The IEP indicated that review "of the health history was completed by Dr. Gabe Charbonneau, Primary Care Provider." Tr. 249. The person completing the IEP indicated that, due to Plaintiff's "history of [foster care] placement, Dr. Charbonneau was likely able to provide the most accurate health history. Concerns regarding focus, concentration and peer/teacher relationships were reported." Tr.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 14

a diagnosis and areas of "concern," but no specific limitations are assessed.  Tr. 249.  Here, the Court does not discern any error by the ALJ in failing to "consider" the single-sentence reference to Dr. Charbonneau's report.  First, his report is not part of the record, and second, the reference to Dr. Charbonneau's report does not include any functional limitations.  *See, e.g., Turner v. Comm'r of Soc. Sec. Admin.*, 613 F.3d 1217, 1223 (9th Cir. 2010) (where physician's report did not assign any specific limitations or opinions in relation to an ability to work, "the ALJ did not need to provide clear and convincing reasons for rejecting [the] report because the ALJ did not reject any of [the report's] conclusions"); *see also Kay v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985) (the "mere diagnosis of an impairment ... is not sufficient to sustain a finding of disability.").

Similarly, in support of his contention the ALJ should have credited more than Mr. Sadler's opinion, Plaintiff contends the ALJ should have credited Dr. Pollack's opinion with respect to the domain of acquiring and using information.  ECF No. 18 at 12.  In April 2014, examining psychologist Dennis Pollack, Ph.D.,

---

249.  Accordingly to the IEP, Dr. Charbonneau reported a diagnosis of ADHD on November 10, 2010, and reported this as a condition which may negatively impact academic skill acquisition, attention, concentration, and communication.  Tr. 249.

assessed, in part, "marked limitations in cognitive functioning."  Tr. 28 (citing Tr. 393).

First, the ALJ gave this opinion little weight because it was inconsistent with Dr. Pollack's own test results.  Tr. 28.  An ALJ may reject an opinion that is inconsistent.  *Connett v. Barnhart*, 340 F.3d 871, 875 (9th Cir. 2003) (affirming ALJ's rejection of physician's opinion as unsupported by physician's treatment notes).  The ALJ found that the assessed marked cognitive limitations are inconsistent with the results of tests administered by Dr. Pollack.  Tr. 28.  The ALJ found test results showed intelligence in the low average range, scores that do not equate to marked limitations.  Tr. 28 (citing Tr. 393) (Dr. Pollack opined Plaintiff's results on the Wechsler Adult Intelligence Scale IV yielded a full scale IQ of 80, in the low average range and at the 9th percentile); (citing Tr. 55-56) (Dr. McKnight opined Dr. Pollack's testing yielded "very average" results, test results did not reach two standard deviations below the mean, and limitation in this domain is less than marked).  This was a specific, legitimate reason to give limited weight to Dr. Pollack's opinion.

Next, the ALJ gave Dr. Pollack's opinion little weight because it is inconsistent with the record, including other objective findings.  Tr. 28.  An ALJ may discredit a physician's opinions that are unsupported by the record as a whole or by objective medical findings.  *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d

1190, 1195 (9th Cir. 2004). The ALJ found, for example, that the results of tests administered by Dr. Ethington were, like Dr. Pollack's, in the low average range. Tr. 26 (citing Tr. 346-48) (Dr. Ethington's test results); Tr. 27 (citing Tr. 54-55) (Dr. McKnight's interpretation of these scores as in the low average range).

This was a reasonable interpretation of the evidence. Since the evidence is susceptible to more than one rational interpretation, the ALJ's conclusion must be upheld. *See Burch v. Barnhart,* 400 F.3d 676, 679 (9th Cir. 2005).

2. *Attending and Completing Tasks*

The ALJ found less than marked limitation in attending and completing tasks. Tr. 30. The domain of "attending and completing tasks" is concerned with a child's ability to focus and maintain attention and ability to see tasks to completion. SSR 09-4p. A typically functioning school-age child is expected to (1) focus attention in a variety of situations; (2) concentrate on details and avoid careless mistakes; (3) change activities without distracting others; (4) sustain attention sufficiently to participate in group sports, read alone, or complete family chores; and (5) complete a transition task without extra reminders or supervision. SSR 09-4p.

In assessing the domain of attending and completing tasks, the ALJ found that although Plaintiff refuses to attend school, there is little evidence that he does not attend and complete tasks in all other facets of his life. Tr. 30 (citing Tr. 174).

The ALJ found, for example, that Plaintiff was able to keep busy on his own; finished what he started; completed homework on time when he did attend school; and performed household chores every day. Tr. 30 (citing Tr. 174) (Mr. Sadler checked boxes indicating Plaintiff had these abilities). Moreover, the ALJ relied on the testimony of Plaintiff's father, who stated that Plaintiff is the best helper of his father's three sons, further indicating the ability to attend and complete tasks. Tr. 30 (citing Tr. 64) (Mr. Ferrel testified Plaintiff had his chores "down pat," did his dishes every day, helped fold clothes, and is probably the best helper of his three boys).

The ability to sustain attention sufficiently to complete family chores, for example, demonstrates functioning in this domain. S.S.R. 09-4p (sustain attention sufficiently to . . . complete family chores). The ALJ also found that Plaintiff had a less than marked limitation in attending and completing tasks in part because Plaintiff "completed his homework on time when he does attend school." Tr. 30 (citing Tr. 174). As discussed, the ALJ noted Plaintiff's attendance issues. Tr. 25 (citing Tr. 185-86, 188) (Ms. Stookey "noted [Plaintiff] had obvious problems in nearly all functional areas, but also noted she did not know very much about the claimant due to his poor attendance."). Although there is conflicting evidence (*see, e.g.*, Tr. 259) (in May 2011, teachers reported Plaintiff had missed 19 assignments since the start of fourth quarter; rarely or never turned in assignments on time; and

specially designed instruction was recommended), the ALJ's interpretation of the evidence was reasonable. Since the evidence is susceptible to more than one rational interpretation, the ALJ's conclusion must be upheld. *See Burch*, 400 F.3d at 679. The ALJ's finding of less than marked limitation in the domain of attending and completing tasks is supported by the record.

### 3. *Interacting and Relating With Others*

The ALJ found Plaintiff has less than marked limitation in interacting and relating with others. Tr. 31. The domain of "interacting and relating with others" is concerned with a child's ability to initiate and sustain emotional connections with others, cooperate with others, comply with rules, respond to criticism, and respect and take care of the possessions of others. 20 C.F.R. § 416.926a(i) (2011). The Regulations also provide a non-exhaustive list of "[e]xamples of limited functioning in interacting and relating with others, which includes, among others, a lack of close friends, difficulty playing games or sports with rules, and difficulty communicating with others." 20 C.F.R. § 416.926a(i)(3) (2011).

First, the ALJ relied, in part, on Mr. Sadler's report that indicated Plaintiff had limited communicative difficulties. Tr. 31 (citing Tr. 170). Specifically, Mr. Sadler noted that Plaintiff can answer phone calls, deliver phone messages, repeat stories that he has heard, tell jokes, use sentences, ask for what he needs, talk with his family and talk with his friends. Tr. 31 (citing Tr. 170). The ALJ noted that

Mr. Sadler indicated Plaintiff only has difficulty communicating when attempting to explain why he did something. Tr. 31 (citing Tr. 170). The ALJ, again relying on Mr. Sadler, further found Plaintiff has friends his own age and no difficulty making friends; he has some trouble getting along with his teachers but generally gets along with adults and his siblings. Tr. 31 (citing Tr. 172).

Next, the ALJ relied on Plaintiff's reports that he enjoyed being around his friends. Tr. 31 (citing Tr. 347) (Plaintiff told Dr. Ethington he "has a negative attitude toward school and only enjoys being around friends at school."). Moreover, the ALJ relied on Plaintiff's father statement that Plaintiff had little difficulty getting along with others and he had only mild concerns about Plaintiff being excluded or marginalized by his peers. Tr. 31 (citing Tr. 347). Finally, the ALJ noted Plaintiff was consistently cooperative and polite during treatment sessions and examinations. Tr. 31; *see, e.g.*, Tr. 345 (Dr. Ethington described Plaintiff as "quiet and polite."); Tr. 391 (Dr. Pollack described Plaintiff as cooperative throughout the interview and testing). Although Plaintiff's special education teacher opined in May 2012 that Plaintiff had "obvious problems" interacting and relating with others, she also noted Plaintiff's frequent absenteeism. Tr. 188. The ALJ's conclusion that Plaintiff's social abilities are consistent with less than marked limitations in interacting and relating with others is supported by the record. Tr. 31.

Plaintiff cites other evidence he alleges shows marked limitation in this domain. ECF No. 18 at 13. For example, Plaintiff cites teachers' reports in November 2010 and May 2011, which reported Plaintiff was withdrawn, depressed, and had behavioral symptoms and conduct problems. ECF No. 18 at 13 (citing Tr. 251, 259). This may indicate a degree of limitation in interacting and relating with others, but the extent and duration of any limitation is unclear from these references. As another example, Plaintiff cites his own statements. ECF No. 18 at 13 (citing Tr. 251) (in a self-report Plaintiff completed in November 2010, there were no scales in the elevated or clinical range). This does not support Plaintiff's contention that he has marked limitation in interacting and relating with others. By way of further example, Plaintiff cites two statements he made to treating therapist Mr. Stein. First, Plaintiff told Mr. Stein that his goals included not getting in trouble at school, continuing to get along with his housemates and doing what his foster parents told him to do. ECF No. 18 at 13 (citing Tr. 268, 270, 272). Second, Plaintiff cites his June 2012 statement to Mr. Stein that he was recently suspended from school and that he got in trouble at home for arguing with his brother. ECF No. 18 at 13 (citing Tr. 337).

As more examples, Plaintiff cites his father's somewhat contradictory statements. ECF No. 18 at 13. In June 2012, Mr. Ferrel testified that two to three times a week Plaintiff got angry "mainly with his brothers," including an occasion

when Plaintiff pulled a knife on his brother. Tr. 65. However, in October 2012, Mr. Ferrel told Dr. Ethington Plaintiff was usually pretty quiet; did not like being told he was wrong and could be prone to anger; but was otherwise cooperative, such as with chores. Tr. 346. This evidence is contradictory and does not undermine confidence in the ALJ's assessment of the evidence.

Plaintiff contends two of his foster parent's statements in 2010 indicate marked limitation in interacting and relating with others. ECF No. 18 at 13. In July 2010, Plaintiff's foster parent described Plaintiff in part, as having flat affect, over-reacting and internalizing. Tr. 288. In November 2010, his foster parent indicated Plaintiff had clinically significant behaviors in aggression, conduct problems, and behavioral symptoms. Tr. 251. Finally, Plaintiff contends treating therapist Mr. Stein opined Plaintiff had poor insight. ECF No. 18 at 13 (citing Tr. 338). Since the evidence here is susceptible to more than one reasonable interpretation, the ALJ's conclusion must be upheld. *See Burch*, 400 F.3d at 679. The ALJ's finding of less than a marked limitation in the domain of interacting and relating with others is supported by the record.

### 4. *Caring for Self*

The ALJ found less than a marked limitation in the domain of caring for self. Tr. 32. The domain of "caring for self" is concerned with a child's ability to maintain a healthy emotional and physical state, including appropriately meeting

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 22

physical and emotional wants and needs, coping with stress and changes, and caring for health, possessions, and living area. 20 C.F.R. § 416.926a(k) (2011). Limitations in this domain are shown by inappropriate personal hygiene, self-injurious behavior, disturbances in eating or sleep patterns, and inability to spontaneously pursue enjoyable activities. 20 C.F.R. § 416.926a(k)(3)(iii)-(vi) (2011).

The ALJ noted Plaintiff "has some trouble remembering to take care of his personal hygiene," but he is physically and mentally capable of managing his own personal hygiene. Tr. 31-32 (citing Tr. 173). Mr. Sadler noted that Plaintiff is "forgetful when it comes to his hygiene," and that he will have periods of time when he will not bathe and has an odor of urine, and he needs reminders to take care of his personal hygiene needs. Tr. 183. However, this appears to be the only evidence of difficulty in this domain.

The ALJ found Plaintiff had little difficulty caring for himself. Tr. 33. For example, the ALJ found Plaintiff prepared meals for himself. Tr. 33 (citing Tr. 173) (Mr. Sadler indicated Plaintiff can cook a meal for himself). The ALJ found, as additional examples, that Plaintiff washed and put away his clothes; remembered to take his prescribed medication; knew how to use public transportation and was able to get to school on time. Tr. 33 (citing Tr. 173) (Mr. Sadler indicated Plaintiff had these abilities). The ALJ further found that Plaintiff

kept out of trouble, avoided accidents, obeyed rules, and asked for help when needed. Tr. 33 (citing Tr. 173) (Mr. Sadler opined Plaintiff had these abilities). Moreover, as even more examples, the ALJ found Plaintiff was not markedly limited in this domain because Plaintiff was also able to look out for his younger brother. Tr. 33. The ALJ found Plaintiff told Dr. Pollack that he walks his younger brother to the bus stop in the morning and picks him up in the evening. Tr. 33 (citing Tr. 393).

Plaintiff challenges the ALJ's finding by citing evidence that is essentially indicative of behavioral problems. ECF No. 18 at 14 (citing e.g., Tr. 259 (teacher reports indicated discipline referrals for defiance); Tr. 338 (school suspension); Tr. 274 (reports of Plaintiff stealing)). These records do not demonstrate that the ALJ's conclusion was unsupported. The ALJ's interpretation of the evidence was reasonable. Since the evidence is susceptible to more than one rational interpretation, the ALJ's conclusion must be upheld. *See Burch*, 400 F.3d at 679.

**B.  Medical Opinion Evidence**

Next, Plaintiff contends the ALJ failed to consider the opinion of Dr. Charbonneau and improperly discredited the opinion of Dr. Pollack. ECF No. 18 at 3-7.

There are three types of physicians: "(1) those who treat the Plaintiff (treating physicians); (2) those who examine but do not treat the Plaintiff

(examining physicians); and (3) those who neither examine nor treat the Plaintiff but who review the Plaintiff's file (nonexamining or reviewing physicians)." *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001) (brackets omitted). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Id.* "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." *Id.* (citations omitted).

If a treating or examining physician's opinion is uncontradicted, an ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995)).

1          *1.     Dr. Charbonneau*

2          Gabe Charbonneau, M.D., is a primary care provider who is cited in an IEP

3   with the Mead School District dated November 11, 2010. Tr. 249. As noted, Dr.

4   Charbonneau's report is not part of the record; it is merely referenced. Dr.

5   Charbonneau apparently diagnosed ADHD. Tr. 249. The IEP indicates that Dr.

6   Charbonneau reported concerns regarding Plaintiff's focus, concentration, and

7   peer/teacher relationships, and indicated ADHD is a condition which "may

8   negatively impact academic skill acquisition, attention, concentration, and

9   communication." Tr. 249. The ALJ did not address the IEP references to Dr.

10  Charbonneau's report.

11         Plaintiff contends Dr. Charbonneau's opinion is particularly relevant to the

12  first domain of acquiring and using information. ECF 18 at 11. However, as

13  previously discussed, the Court discerns no error by the ALJ in failing to

14  "consider" Dr. Charbonneau's opinion because it was not part of the record and he

15  did not assess any limitations. *See, e.g., Turner*, 613 F.3d at 1223 (where

16  physician's report did not assign any specific limitations or opinions in relation to

17  an ability to work, "the ALJ did not need to provide 'clear and convincing reason'

18  for rejecting [the] report because the ALJ did not reject any of [the report's]

19  conclusions"); *see also Kay*, 754 F.3d at 1549 (the "mere diagnosis of an

20

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 26

impairment ... is not sufficient to sustain a finding of disability.").  Here, the ALJ

did not err in failing to discuss the reference to Dr. Charbonneau's report.

### 2. Dr. Pollack

Dennis Pollack, Ph.D., performed a psychological evaluation of Plaintiff and

thereafter rendered a report on April 12, 2014.  Tr. 26 (citing Tr. 391-99).  He

diagnosed attention deficit hyperactivity disorder (ADHD), cognitive disorder not

otherwise specified (NOS), and anxiety disorder not otherwise specified (NOS).

Tr. 396.  Further, Dr. Pollack opined that Plaintiff has marked limitations in

cognitive functioning, social functioning, and behavioral functioning.  Tr. 397-98.

Dr. Pollack noted that on the Wechsler Adult Intelligence Scale-IV, Plaintiff's IQ

test result was 80, a score that fell in the low average range in the ninth percentile.

Tr. 393.  The ALJ gave minimal weight to Dr. Pollack's opinion.  Tr. 28.

Because Dr. Pollack's opinion was contradicted by Dr. McKnight, Tr. 57,

the ALJ was required to provide specific and legitimate reasons for rejecting Dr.

Pollack's opinion.  *Bayliss,* 427 F.3d at 1216.

The ALJ found Dr. Pollack's assessed limitations were inconsistent with Dr.

Pollack's own examination and test results.  Tr. 28.  A medical opinion may be

rejected by the ALJ is it is conclusory, contains inconsistencies, or is inadequately

supported.  *Bray*, 554 F.3d at 1228.  Factors relevant to evaluating any medical

opinion include the amount of relevant evidence that supports the opinion, the

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 27

quality of the explanation provided in the opinion, and the consistency of the

medical opinion with the record as a whole.  20 C.F.R. § 416.927(c) (2012);

*Lingenfelter v. Astrue*, 504 F.3d 1028, 1042 (9th Cir. 2007); *Orn v. Astrue*, 495

F.3d 625, 631 (9th Cir. 2007).

   The ALJ pointed out that the results of Plaintiff's IQ testing administered by

Dr. Pollack were inconsistent with his assessed limitations.  Tr. 28; *cf.* Tr. 393

(Plaintiff's IQ score was 80, in the low average range, indicative of less than

marked limitations) *with* Tr. 397 (Dr. Pollack assessed marked limitations in

cognitive functioning).  The ALJ further noted Dr. Pollack observed that Plaintiff's

scores in 2014 were better than they had been in 2012.  Tr. 27 (citing Tr. 394)

(noting Plaintiff's Wechsler Adult Intelligence Scale-IV scores "are better than

those found in 2012.").  The ALJ is correct that this finding by Dr. Pollack is also

inconsistent with assessed marked cognitive limitations, since it is indicative of

improvement rather decline in cognitive functioning.  This was a specific,

legitimate reason to give limited weight to Dr. Pollack's opinion.

   Next, the ALJ gave Dr. Pollack's opinion limited weight because it is

unsupported by and inconsistent with the record as a whole.  Tr. 28.  The ALJ

found, for example, that Dr. Pollack's assessed marked limitation in social

functioning, Tr. 398, was unsupported by the record because Plaintiff never

reported marked difficulties in getting along with others.  Tr. 28.  The assessed

limitation is unsupported because treatment records fail to show that Plaintiff told treatment providers that he experienced difficulties in social functioning. An ALJ may reject an opinion that is unsupported by the record as a whole or by objective findings. *Batson*, 359 F.3d at 1195. For example, Plaintiff in counseling expressed that he wanted to not get "in trouble at school," and was described by his foster parent as "really personable"; there were no reported difficulties in social functioning. Tr. 268 (in March 2012 treatment provider Bret Stein, M.A., noted Plaintiff expressed the desire to attend classes and stay out of trouble at school; his guardian described Plaintiff as personable and did not report that he experienced difficulties in social functioning). The ALJ further found, as another example, that Plaintiff was consistently cooperative and polite during treatment sessions and examinations. Tr. 28, *see* Tr. 308 (in February 2012, treatment provider Mary Gallegos, ARNP, noted Plaintiff was pleasant and cooperative); Tr. 310 (in April 2011, treatment provider Angela Haugo, D.O., noted Plaintiff was alert, answered questions appropriately, and was cooperative). The ALJ also found, as yet another example, that Plaintiff had friends at school and no reported difficulty making new friends. Tr. 28, *see* Tr. 347 (Plaintiff told Dr. Ethington that he "only enjoys being around friends at school" and reported an average level of social interest).

Moreover, the ALJ additionally found, as still another example, that Plaintiff's father opined Plaintiff has no difficulties with social functioning. Tr. 28

(citing Tr. 346) (Dr. Ethington noted Mr. Ferrel rated Plaintiff's behaviors within the average range); Tr. 347 (Mr. Ferrel told Dr. Ethington Plaintiff does everything that is asked of him except go to school, and he had no complaints regarding Plaintiff's behavior, other than his refusal to attend school); Tr. 64 (Mr. Ferrel testified Plaintiff's medication keeps him stable). The record as a whole, including Plaintiff's own statements, contradicts Dr. Pollack's assessed marked limitations. This was a specific, legitimate reason to give limited weight to Dr. Pollack's opinion.

### 3. Other opinions

Dr. McKnight, a reviewing psychologist, testified at the hearing. He opined that Plaintiff did not meet or equal a listed impairment and limitations in all domains were less than marked. Tr. 57. He further opined that Plaintiff demonstrated the ability to perform reasonably well academically. Tr. 27 (citing *e.g.,* Tr. 54 (Dr. McKnight testified all scores were "exceptionally average," referring to November 2010 testing)). The ALJ gave Dr. McKnight's opinion significant weight. Tr. 27. Plaintiff does not challenge the weight the ALJ gave Dr. McKnight's opinion; instead, Plaintiff simply contends the ALJ erred when he relied solely on Mr. Sadler's report and failed to credit the opinions of Dr. Charbonneau and Dr. Pollack.

1    In any event, the ALJ credited Dr. McKnight's opinion because Dr.

2    McKnight "had the opportunity to review all of the Plaintiff's medical records and

3    ask him questions at the hearing." Tr. 27. The ALJ also found Dr. McKnight's

4    opinion was largely consistent with the objective medical evidence that showed an

5    improvement in Plaintiff's condition with prescribed medication. Tr. 28; *see, e.g.*,

6    Tr. 310 (in April 2011, Plaintiff appeared stable on his medications); Tr. 329-30

7    (on May 21, 2012, Plaintiff was seen for medication management of ADHD, and

8    medications were continued as prescribed). Because Dr. McKnight had the

9    opportunity to review all of the records and ask Plaintiff questions at the hearing,

10   and because the objective evidence of improvement in Plaintiff's condition was

11   consistent with Dr. McKnight's opinion, the ALJ was entitled to give greater

12   weight to his opinion than Dr. Pollack's.

13       For the foregoing reasons, the ALJ provided specific and legitimate reasons,

14   supported by substantial evidence, to grant little weight to Dr. Pollack's assessed

15   limitations. In addition, contrary to Plaintiff's contention, the ALJ did not rely

16   solely on Mr. Sadler's report when he weighed the evidence of Plaintiff's

17   limitations. Instead, the ALJ considered the opinions of the treating, examining

18   and reviewing sources, including Mr. Sadler, as well as the lay testimony,

19   including of Plaintiff's father, when the ALJ considered Plaintiff's limitations.

20   Moreover, while Plaintiff generally cites to evidence in selected opinions that

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 31

could be considered more favorable to Plaintiff, and vaguely asserts that the ALJ failed to consider those findings (ECF No. 18 at 11-14), Plaintiff has not argued with specificity that the ALJ's rejection, to the extent opinions were rejected, was unreasonable or not based on substantial evidence. *See Burch,* 400 F.3d at 679 (where evidence is susceptible to more than one rational interpretation, the court must uphold the ALJ's conclusion).

## CONCLUSION

Having reviewed the record and the ALJ's findings, this Court concludes the ALJ's decision is supported by substantial evidence and free of harmful legal error.

**IT IS ORDERED:**

1. Plaintiff's Motion for Summary Judgment, ECF No. 18, is **DENIED.**

2. Defendant's Motion for Summary Judgment, ECF No. 20, is **GRANTED.**

The District Court Executive is directed to file this Order, enter JUDGMENT FOR THE DEFENDANT, provide copies to counsel, and **CLOSE THE FILE.**

DATED August 22, 2017.

*s/Mary K. Dimke*
MARY K. DIMKE
UNITED STATES MAGISTRATE JUDGE